We'll hear the next case, which is United States v. Lloyd. May it please the Court, my name is Lawrence Gerzak, I represent Annis Ricardo Lloyd. I was not counsel for Mr. Lloyd below, and I have asked for three minutes for rebuttal. The thrust of our argument, Your Honors, is that the trial judge on this violation of supervised release proceeding did not have enough evidence under Federal Rules of Criminal Procedure 32.1 to find that Mr. Lloyd had violated the conditions of his supervised release with respect to the alleged criminal activity he had engaged in. The Court, I'm sure, is aware that the state court charges that were brought against Mr. for the violation of supervised release were dismissed. Nevertheless, the probation department in the Eastern District decided to go forward, or maybe the U.S. Attorney's Office decided to go forward, with their presentation that there had been . . . There were witnesses who testified to what they observed, namely her injuries? Yes. They saw her with injuries? Yes. There was . . . the witnesses testified to her statements, which probably are indeed excited utterances, that he hit me? Well, I disagree with that, Your Honor, in the sense that excited utterances usually — not in every single circumstance, but usually — require a contemporaneousness with the event for it to be an excited utterance. Are there some cases that allow excited utterances in, even though they were made several hours after the incident? There are some cases, but we don't believe . . . This was how long after the minutes? I don't think it was minutes, Judge. I think that they began to investigate. They had to find Ms. Canty. Ms. Canty was somewhere else. Ms. Canty did say that she had been hit, but that evidence was put forward, not by Ms. Canty, but by law enforcement, and so, as we cite in our brief, when law enforcement puts forth evidence, it has to be looked at with a different kind of eye. It's not just hearsay, but it's hearsay proposed by someone with an adversarial interest in the outcome. And Ms. Canty was not ever approached by the government here to see if she was willing to testify. The judge below said that, in fact, used her absence to buttress his decision that the charges here were true. He said, you know, this is a typical case where the female victim is afraid to go forward against the male perpetrator, and we all know that that's the case, and so, I believe that that's why this situation warrants a finding of violation, but I don't believe that the trial judge had the right to assume that because Ms. Canty wasn't actually testifying herself, that that was evidence of anything, especially since the government didn't seek to have Ms. Canty testify at the hearing. They had no idea whether Ms. Canty was willing to do that or not. I thought there was a reference to an investigator going out to talk to her. Well, the assistant . . . They didn't talk to her, I think. I think they did, but the assistant U.S. attorney acknowledged that it was unknown to the assistant U.S. attorney whether there was a decision on Ms. Canty's part not to testify, and if there had been, that should have been put forward at the hearing so that the district judge would have had that information available to him so that he could have used it in his analysis. First of all, he assumed that that was the case, and then second of all, he based his that somehow is affirmative evidence of guilt that the person has committed the specific crime. There's no direct evidence at all. It's all circumstantial evidence about the bruising and that sort of thing that came in directly. So, that isn't enough, in our view, to sustain the judge's finding that this event happened. Our second argument, of course, is about the sentencing, and we say that the trial judge did not go through the proper analysis, just basically said that there was . . . mentioned that the maximum sentence was twenty-four months and that he was going to give the maximum sentence. He didn't detail why he was . . . The report indicated what the range was, and the range was above the statutory maximum. Isn't that . . . That's correct. Yeah. But he . . . So, there wasn't any point in going through a calculation if the . . . Well, there's no automatic finding that if the guideline is above the statutory maximum that you're required to impose the statutory maximum. He could have, even without a statutory maximum, he could have imposed a sentence of twenty-two the statutory maximum, and he, under the law, owed an obligation to explain why he was giving that sentence. And when you look at it . . . Was there any objection at the sentencing to the failure to go through the detailed sentencing guideline analysis? No. So, this is a plain error issue at best. It is a plain error issue. That's correct, Your Honor. But when you look at it in the context of the original sentence here was eighteen months, and then Mr. Lloyd was sentenced to twenty-four months for violating . . . And what was the underlying crime? Remind me, please. The underlying crime was failing to register as a sex offender. Mr. Lloyd had a sex offense conviction. The judge could quite reasonably have concluded that assaulting this woman was more serious than failing to register, particularly when it comes on the heels of a prior criminal conviction, and he does it on supervised release in violation of the terms of his release. I'm not arguing that if, in fact, it had been proven that he had assaulted the woman, that that isn't a very serious charge. But our whole point is that there wasn't enough evidence for the trial judge to make that finding. So, do you agree that your sentencing argument falls if we think that the evidence was sufficient to sustain the conviction for the violation? I don't know that it falls, but it's certainly weakened. Certainly on its way down. If that's how you want to put it, Judge. It's weakened. I can't say otherwise. Thank you. We'll hear from you. Good morning, Your Honors. May it please the Court. Assistant United States Attorney Kevin Trowell for the government. As I think the defendant all but concedes in putting aside a brief comment about the excited utterances in response to your question, Judge Chinn, really has no legal basis to challenge the admissibility of the overwhelming amount of the evidence, an overwhelming part of the evidence that was adduced below. His issue is really with a subset of that evidence that involves certain, but not all, out-of-court statements made by Ms. Canty. Taken as a whole, the officer's personal observations, the demeanor of the parties, the physical appearance of the victim, all of these things together easily meet the preponderance standard in this context. And one of the issues that Mr. Lloyd's counsel raised a moment ago and in his brief is that for some reason, I don't think supported by the law, that the law enforcement witnesses are not entitled to talk about or a skeptical eye should be cast on their personal observations. The rules certainly, in general, in a trial context, would prohibit the admission of police reports. That's obviously well settled. It's an entirely different situation when you have officers who responded to an incident, observed the marks on her neck, on her face, and so on, and are simply reporting that. There's no reason to discredit that, and the judge certainly found none. I think just to follow up on a brief point you made, Judge Kaplan, one of the issues with respect to the issues that Mr. Gerzog raises is that there were almost no objections below. There was an objection to a set of documents, but with respect to, for example, Ms. Canty, there was no objection to the government's proffered reason for her unavailability. There was no objection to her out-of-court statements as admitted through the probation officer. And in fact, the defense, such as it was, appears to have been either that nobody personally saw Mr. Lloyd hit her, but no dispute she was hit, or that there was an argument between the two of them, or alternatively, that she was provoked, that Mr. Lloyd rather was provoked. And I think the district judge was entitled to understand that through the cross-examination, that these two conflicting defenses really don't cast any doubt whatsoever on any of the evidence that was deduced at trial and defined by a preponderance that the government had met its burden. If there are any further questions, I'm happy to answer them, otherwise we'll rest on our papers. Thank you. Thank you, Your Honor. I hear the rebuttal. I'll just briefly mention in reverse order, it's not a conflicting defense to say that it never happened, but if it did happen, it happened because of provocation. Those are not . . . those are perfectly valid defenses to put forward under those circumstances. The judge would have to find in the first place, which he had no . . . Can you testify that the defendant had marks on his body when they observed him? No. He had marks on her body, right? She did. And that was . . . Can you testify to that? They did. On her throat? My colleague is quite correct that that was not hearsay. They saw that. So they're fully entitled to say, yes, we saw and she was crying and whatever else. What they're not entitled to say and what the law enforcement . . . Or what we argue that they were . . . Rules of evidence aren't in play. Question is whether what they said somehow violated a due process standard, right? And Rule 32.1.1 of the Federal Criminal Procedure. My colleague said that it doesn't make sense to say that law enforcement can't testify as to what they've observed, and of course that's correct. That's not our argument. As you said, Judge Wesley, no problem testifying what they observed. I was just wondering what Judge Deary had heard in terms of the context of the visual appearance of both of the individuals. I don't believe he heard anything from . . . about Mr. Lloyd's appearance, but then I don't know how that would have been necessarily probative. The fact that he wasn't injured doesn't mean that if in fact . . . You were talking about provocation. Well, provocation doesn't have to be physical provocation. Oh, I see. So . . . and all . . . even if it was physical provocation, you know, all assaults don't necessarily leave marks. You know, you can engage in a certain level of . . . slap someone across the face, let's say, and that doesn't end up in a . . . any kind of physical mark. That's all I have to offer. Thank you.